FILED
CHARLOTTE, NC

JUN 0 2 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC



## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH
## CAROLINA

| | | |
|---|---|---|
| **WINSTON HAMILTON,** | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO.:** 3:23-cv-333-FDW |
| | § | |
| **v.** | § | |
| | § | |
| **DUKE ENERGY** | § | |
| **CORPORATION and DUKE** | | |
| **ENERGY BUSINESS** | | |
| **SERVICES LLC.,** | § | **JURY DEMANDED** |
| *Defendants.* | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Winston Hamilton (hereinafter referred to as "Plaintiff") in the above-referenced matter, complaining of and about Defendants Duke Energy Corporation and Duke Energy Business Services LLC. (hereinafter referred to as "Defendants"), and for causes of action files this Plaintiff's Original Complaint, showing to the Court the following:

### I. PARTIES

1.    Plaintiff is an individual residing in Harris County, Texas. Plaintiff is a citizen of the United States and the State of Texas.

| | |
|---|---|
| Name | Winston Hamilton |
| Street Address | 13408 Preston Cliff Ct. |
| City and County | Houston / Harris County |
| State and Zip Code | TX/77077 |
| Telephone Number | 704-999-4355 |
| E-mail Address | Wrhamil55@gmail.com |

*Plaintiff's Original Complaint*                                                        1

2.     Defendants, Duke Energy Business Services LLC., and Duke Energy Corporation are corporations organized and existing under the laws of the State of North Carolina.

Defendant No. 1

| | |
|---|---|
| Name | Duke Energy Corporation |
| Service Contact | James E. McLean, ESQ / Deputy General Counsel |
| Street Address | 525 South Tryon Street |
| City and County | Charlotte / Mecklenburg |
| State and Zip Code | NC/28202 |
| Telephone Number | 513-287-4341 |
| E-mail Address | James.McLean@duke-energy.com |

Defendant No. 2

| | |
|---|---|
| Name | Duke Energy Business Services LLC |
| Service Contact | James E. McLean, ESQ / Deputy General Counsel |
| Street Address | 525 South Tryon Street |
| City and County | Charlotte / Mecklenburg |
| State and Zip Code | NC/28202 |
| Telephone Number | 513-287-4341 |
| E-mail Address | James.McLean@duke-energy.com |

## II. <u>JURISDICTION AND VENUE</u>

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: 42 U.S.C. 1981 (hereinafter referred to as "Section 1981") and 18 U.S.C. §241. The unlawful employment practices were committed within the jurisdiction of this Court.

### III.  NATURE OF THE ACTION

4.      Plaintiff files this action against Defendant for its race discrimination and retaliation under 42 U.S.C. §1981.

5.      Plaintiff files this action against Defendant for Conspiracy Against Rights of Plaintiff under 18 U.S.C. §241.

### IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      No administrative exhaustion or other conditions precedents are required prior to the filing of claims under 42 U.S.C. §1981.

7.      This case was originally filed in the Southern District of Texas, Case 4:21-cv-04070 on December 14, 2021 of claims under 42 U.S.C. §1981.  The case was partially dismissed on August 8, 2022 for lack of venue, and fully dismissed without prejudice on March 2, 2023 also for lack of venue.  The honorable United States District Judge Andrew Hanen of the Southern District of Texas, Houston Division ruled that the court must accept all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.

### V.  FACTS

8.      Plaintiff was hired by Defendant in January 2005, and quickly earned the title of Engineer III, during the first quarter of 2010. Despite consistently strong performance reviews, and assurances from his direct supervisors and departmental managers, Plaintiff would not receive another promotion until the year 2018. This was due to retaliation for making complaints based on race. The result was that Plaintiff was not compensated equally to his peers for this period.

9.      In 2011, Plaintiff challenged his performance evaluation for the year, through HR, because the evaluation originally contained many errors. Highlights of errors included in the original evaluation were work products that did not belong to plaintiff, and negative remarks attributed for the successful completion of an elective Systems Operations training course (Plaintiff did not score

*Plaintiff's Original Complaint*                                                                                                                   3

at the top of his class was the remark on the original evaluation). The 2011 Performance Evaluation was revised and scored higher by the Reactor Systems Director at that time Eddie Anderson. Mr. Anderson also told Plaintiff that if he maintained performance, he would be promoted to Lead Engineer in 2013, which was the first available opportunity based on Plaintiff's performance history.

10.     Plaintiff requested interviews with Human Resources, in which Plaintiff stated on several occasions that the evaluation was driven by limiting Plaintiff's promotional opportunity based on his race.  Kathy Simmons was the acting HR representative at Oconee Nuclear Station at that time.

11.     Plaintiff's belief was based on both perception and direct comment. First, the opportunity for black engineers to enter Site Operations as Senior Reactor Operators (SROs) at Oconee nuclear station was slim. Plaintiff had not seen a black SRO recruited from engineering in the time Plaintiff was at the plant, January 2005 through March 2014. Plaintiff's previous counterpart, a white male, in the same role and duties, was taken for this position.

It shall be noted that Plaintiff had been told for several years, from 2008 to 2011, that he would be a strong candidate for the Oconee Operations group and promotion by his direct supervision. Despite strong performance reviews and positive reinforcement that was on-going through 2011, Plaintiff was never selected for the Operations group.  He would eventually be allowed to take an elective initial systems course in which he performed his work-place duties in parallel to training as witnessed in the attached affidavit submitted by Ivan Jenkins.

12.     In 2012, multiple statements were made to Plaintiff's Supervisor at Oconee Nuclear Station regarding Plaintiff's perceived treatment from management and specific co-workers and that it was based on race.

13.     An incident occurred during a refueling activity in which Plaintiff was not allowed to leave the containment building for a period of 5 hours. When Plaintiff asked for relief (bathroom), he

was yelled at and spoken rudely to. Other personnel, supporting the same activity in the same location, had rotations of three hours. When Plaintiff finally returned, he was persuaded by Mr. Anderson to not file a complaint, and expensed a dinner for Plaintiff and his spouse as retribution. Plaintiff still has expense report for that "Management Sponsored" meal.

14.     In December 2012, Plaintiff addressed his race-based discrimination concerns with the Oconee Site Vice President Preston Gillespie in a face-to-face meeting. A similar meeting occurred the following year with the Site Vice President Scott Batson.

15.     Moreover, direct comments were made during Plaintiff's tenure, such as, "**you will never be senior leadership** at Oconee", and "I know **what a manager looks like,**" from coworkers and management personnel.  Notably, the statement "I know what a manager looks like" was made by Ed Burchfield (Managing Director) directly to Plaintiff during a workers group meeting shortly following Plaintiff's interview for a Mechanical Components Engineering Manager position, a position that Plaintiff was readily prepared for through his work on the Reactor and Electrical Systems Steering Committee.  This would be followed by intimidation tactics <u>collectively executed</u> by Oconee Nuclear Station Senior Management members such as Tom Ray and Scott Batson, which include but are not limited to ignoring Plaintiff when he would speak, harsh visual ques, and being generally dismissive of Plaintiff.

16.     Despite being told for several years that Plaintiff was on track for promotion, and both supervisor and co-workers of Plaintiff providing a written document for the business need to promote Plaintiff in December 2013 [addressed to Senior management, and attached to this complaint], Plaintiff was never promoted beyond Engineer III at Oconee Nuclear Station. ***This clearly demonstrates intent not to promote Plaintiff, despite his merits.***

17.     In March of 2014, feeling that opportunities would be limited going forward at Oconee Nuclear Station, Plaintiff applied and was accepted to a lateral internal position as a Contract

Manager supporting Major Projects Sourcing Supply Chain. However, it should be made clear that when Plaintiff hired for this position, the hiring manager, Burt Durstock stated that his expectation for this role was someone that filled a higher band on the hierarchy, and Plaintiff should be immediately promoted as the opportunity became available. He went on to further say "I [Plaintiff] should call him" if there were any issues around the promotion. While the criteria had not yet been set for a future promotion, Burt Durstock did state that a supervisory pay band was applied to the position for which Plaintiff applied, but it was not approved at that time. **It was clearly communicated at hire by Burt Durstock to Plaintiff that the position was intended to be at a supervisory pay scale.**

18.    Shortly following the transition, Plaintiff made what he thought was an anonymous comment in the 2014 Employee Engagement Survey which would close sometime around the end of June, 2014. Plaintiff suggested that black people were treated poorly in certain areas of the Nuclear department, and that they shouldn't hire black people into those areas. Plaintiff witnessed disparate treatment for himself and fellow minority workers for years, which prompted the comment. For example, during the same time period of hardship at ONS for Plaintiff, a strong performing minority co-worker had his performance appraisal result reversed by ONS Senior Management after being approved by his direct manager from an overall "meets expectations", to not meets expectations. The co-worker was consequently placed in a performance improvement plan. Co-worker confided in Plaintiff that no real justification was given for the recommendation. The comment made by Plaintiff in the 2014 Employee Engagement Survey is further reinforced by a 2022 North American Young Generation in Nuclear (NAYGN) Career Report published and publicly shared on May 30, 2022 (attached to this filing). Page 4 of the report makes the following statement,

"The nuclear industry should note the discrepancies in pay by gender and ethnicity. Males

consistently make more than females at every level of experience. Caucasian/White NAYGN members consistently make more than their minority peers at every level of experience. [Pages 24,27]"

**THE FORGOING IS CLEAR EVIDENCE OF PERPETUAL SYSTEMIC DISCRIMINATION WITHIN THE INDUSTRY AND GIVES VALIDITY TO PLAINTIFF'S COMPLAINT ABOUT THE TREATMENT OF MINORITIES WITHIN NUCLEAR GENERATION.**

The "anonymous" 2014 Employment Engagement Survey comments would be spread and follow Plaintiff, as both supervisory and non-supervisory personnel would make repeated reference to the Employee Engagement Survey to Plaintiff directly all the way through his departure in 2018. Both Jeffrey Blackwood and Ashley Wrona, individuals identified in the Jesse McCay affidavit as making insensitive remarks, made unsolicited remarks to Plaintiff regarding race discrimination at Duke Energy and "complaining in surveys" at various times through the execution of the Lee Combined Cycle project. **Allowing "Anonymous" survey results to be spread without impunity is willful but for cause race discrimination, perpetuated by the failed policies and hateful decision making of individuals serving Duke Energy Corporation.**

19.    In April 2016, a position was created at a higher band for Contract Manager, Contract Manager II, yet Plaintiff was not evaluated for the position. Plaintiff addressed his functional Director at the time, Mark Teague, about what Burt Durstock said to Plaintiff at hire and his qualifications for the position. It became evident in Mark Teague's response that Plaintiff was not evaluated for the position against the criteria set via e-mail communication dated August, 2016. A white male, with no previous experience in the role for Major Projects, was given the title. Plaintiff had served in the lead position for nearly two years at the time. Further, Plaintiff had a counterpart named Tomas Lubos that served Duke Energy Florida Major Projects. Mr. Lubos was hired into

*Plaintiff's Original Complaint*                                                                                                 7

the group previously with the title of International Sourcing Director for Duke Energy International in 2012 and would lead the commercial effort for multiple major projects in Florida. Mr. Lubos was never promoted even when eligible for the Contracts Manager II position, and was removed from service in the early part of 2016, approximately two months after filing a request for an internal investigation into DEBS bidding practices for the Citrus County Combined Cycle project.

20.     In an effort to quell comments being made by individuals on the Lee Combine Cycle Project, Plaintiff addressed his concerns directly with Todd Shuping, acting Project Director in a one-on-one meeting September 2016. Todd Shuping was dismissive and denied knowledge of any rumor spreading. Plaintiff witnessed Todd Shuping take notes of the meeting. The comments persisted.

This is a key moment, as the comments being made to Plaintiff were that of a personal nature. Plaintiff expressed to Todd Shuping that he believed that his personal, non-work internet activity was being monitored because of the nature of the comments being made to Plaintiff by others. Direct references to certain television programming and unsolicited jokes and comments in regard to particular websites are examples of the consistent harassment Plaintiff endured by several teammates. More importantly, this has become a source of on-going impacts being felt by Plaintiff in Houston, Texas. Case 4:21 cv 02964 was filed against McDermott International on September 10, 2021, which alleged employment discrimination as a direct result of race retaliation involving the on-going malicious rumor spreading perpetuated by DEBS and ultimately Duke Energy Corporation.

Duke Energy failed to protect Plaintiff's personal information. For example, while serving as a Reactor Engineer, there were certain outage activities that would extend past a single work shift. For those activities that required data entry and observation, Plaintiff would be requested by his

supervision to share his company login information with certain co-workers to allow access to data. This presented opportunity for unapproved login and monitoring of personal accounts such as Google which allowed stored passwords (at that time). Plaintiff's personal information was available to be spread (by any employee that had access to his Duke Energy user profile) without regard for his privacy or safety for an extended period of time while working for Duke Energy Carolinas and Duke Energy Business Services, allowed by policies set by Duke Energy Corporation. Plaintiff would start to experience unusual and rude comments and off-putting body language from certain co-workers beginning the 1st quarter of 2014 and would continue through his employment at Duke Energy. In the event that personal information was captured, then disseminated through agents of Duke Energy Corporation, character evidence is not admissible as a general rule per Article 4 (Evidence Relevance and its Limits), Chapter 8 of the NC General Statutes.

It can be concluded that the nature of such willful, malicious, and hateful attacks has irreparably damaged Plaintiff's reputation and caused great pain and suffering. Plaintiff has a reasonable expectation of privacy which was compromised by the failed policies of Duke Energy Corporation.

21.     Plaintiff continued to serve his role as Contracts Manager for the Lee Combined Cycle Project through June of 2018, despite a routinely hostile work environment. Examples of the willful hostile workplace environment include (but not limited to)

- Ashley Wrona would consistently express unprovoked anger at Plaintiff.
- Reggie Austin, once shared jokingly a derogatory picture of Plaintiff that he stated was being shared around the office. Plaintiff believes that there are more such derogatory images and will be a focus of discovery.
- Todd Shuping would routinely call out Plaintiff in meetings in strange attempts to make

*Plaintiff's Original Complaint*                                                                                          9

Plaintiff look in bad character, which was witnessed in the attached Jesse McCay affidavit.

- Jason Holcombe, an IT specialist at Oconee Nuclear station was found to be monitoring Plaintiffs workstation from the later parts of 2017, through 2018. The intent here will be a focus of discovery, as Plaintiff believes it was part of a scheme for his eventual constructive discharge. Plaintiff had not worked or communicated with any one from Oconee Nuclear Station in almost 4 years at this time.

To gain perspective on his time while serving the contracts management role, Plaintiff met with former co-worker, Tomas Lubos in Houston Texas on September 17, 2022. Tomas stated that a hostile workplace environment was manufactured for him once there was disagreement between him and certain project individuals while supporting the Citrus County Combined Cycle Project. Tomas, who is of Latin American decent, cited several incidents of discrimination. They included his project manager stating of his work "that's not how we do things here in this country", and another incident where the project administrative assistant who was unprovoked started yelling profusely at Tomas, so much so that she would spit in his face. Most concerning, is that Tomas stated that on a previous project he was asked to make things more difficult for an undesirable employee, in an attempt to remove that person from the project. Plaintiff concludes that manufacturing a hostile work environment to remove trouble team members was a repeated business practice of DEBS. This willful discrimination executed by DEBS is also a failure of poor policies and oversight by Duke Energy Corporation.

Plaintiff pleaded repeatedly with his Functional Manager Tracy Baker in the early parts of 2018, including during the yearly performance review, that he had grown tired of the personal derogatory remarks being made by personnel, and the lack of promotion despite what Mr. Baker called at the time an "on-going" effort. Plaintiff threatened legal action if his concerns where not addressed. Within two months of that conversation, Plaintiff was promoted to Lead Contracts Manager,

Plaintiff's first promotion in nearly 8 years sometime around June, 2018. The raise however did not compensate for years of being denied promotional raises.

22.     Plaintiff would apply and accept a job offer to be a Senior Manager of Contracts for McDermott International in October of 2018. Plaintiff's last date of employment with Duke Energy was October 26, 2018. When negotiating his pay with the new employer, McDermott made it clear that Plaintiff's compensation was low for the position and years of experience, making it difficult to negotiate a fair starting salary. The willful lack of promotion for such an extended period not only limited Plaintiff's earnings while employed at Duke Energy, but stifled future earnings with other potential employers.

23.     Plaintiff continued to suffer direct impacts due to Duke Energy Corporation but for cause race retaliation after arriving to Houston, TX through direct contacts established with McDermott International Inc. (hereinafter "McDermott").  Direct contacts have been established between McDermott International and DEBS through the performance of the Asheville Combined Cycle project and direct communications between several key decision makers at the time for McDermott International.  Plaintiff filed case 4:21-cv-03097 in the Southern District Of Texas, Houston division.  The case is now settled; however, Plaintiff maintains rights to report all relevant facts to a government agency.

24.     Contact was established between McDermott International, Inc. and Duke Energy Business Services through the performance of the Asheville Combined Cycle Power Plant Project as follows:

The Duke Energy Asheville Combined Cycle (ACC) Power Plant was engineered and. constructed by Chicago Bridge and Iron Company (CB&I), an entity which entered into a Business Combination Agreement, "merged", with McDermott International Inc. on December 18, 2017. McDermott International Inc, is headquartered in the Southern District of Texas, property address

*Plaintiff's Original Complaint*                                                                                                        11

915 N Eldridge Pkwy, Houston, TX 77079.

Mobilization for construction of the ACC project began in 2016 with both units becoming fully operational in April 2020, with a Warranty period extending at least one year past the substantial completion of the project. The ACC project was mainly supported by the CB&I Charlotte office until its closure during the 1st quarter of 2020. Houston based McDermott personnel provided oversight throughout the duration of the ACC construction project, and eventually assumed all project support through the closure of the CB&I Charlotte office during the early months of 2020.

Several Duke Energy Business Services (DEBS) key decision-making personnel were identified in the attached Jesse McCay affidavit, all of which supported the ACC project. John Snyder was the ACC projects General Manager, Jeffery Blackwood served as the Project Director, and Ashley Wrona supported in the role of Project Controls. There were also key project personnel employed by DEBS that supported construction activities for the ACC project that would have been witness to the events outlined by Plaintiff. All referenced personnel worked closely with Plaintiff in support of the W.S. Lee Combined Cycle Power plant project in Anderson County SC and other departmental projects up until Plaintiff's departure in October of 2018.

25. Direct contacts were established between DEBS, Duke Energy Corporation, and McDermott International during and following the on-boarding of Plaintiff to McDermott. Thad Waters, Tenney Way, Jason Ezell, and McDermott HR/Legal departments have been confirmed as direct contacts while employed for McDermott International prior to any formal case discovery. ***These contacts are reasonably available witnesses to this filing***.

Impacts due to But for Cause of Race Retaliation while Plaintiff reported to Thad Waters (hereinafter referred to as "Mr. Waters"), hiring Director for the position of Senior Manager, Contracts Management for the North Central and South America Region (NCSA) are as follows:

o Plaintiff was hired with a salary much lower than his counterpart of same title and position, Phyliss Price (a Caucasian female) at the time of hire. **Mr. Waters explained that Plaintiff's lower salary was due to the compensation of his previous position held at DEBS being significantly lower than what is given for his years of experience**. Plaintiff estimates that his salary was lower than his counterpart's salary by greater than 30%, after reviewing personnel budget reports sometime early in 2019. Plaintiff was also paid less than several of his direct reports the entire duration he held the position.

o Mr. Waters made statements to Plaintiff such as "**your hire was never in doubt.**" This statement would be repeated multiple times through Plaintiff's employment with McDermott. **In light of new facts**, this statement gives way to collusion between McDermott and Duke Energy in regard to Plaintiff's hiring at McDermott. Specifically, in response to a letter of demand referencing EEOC Charge 460-2021-01753, McDermott International corresponded to Plaintiff on May 27, 2021 stating that Plaintiff "did not have any oil and gas or LNG sector experience. His experience was limited to the power sector, a sector in which the company had and continues to have limited projects…" Plaintiff was told that his hire was never in doubt, however, Plaintiff's experience was significantly attacked as a first line of defense in response to a Title VII claim made by Plaintiff despite positive annual performance reviews during the entirety of his time at McDermott. These communications will be a focus of discovery efforts, as this combined with the intentional hostile work environment while working for DEBS reinforces the constructive discharge from DEBS that the Plaintiff experienced.

o Mr. Waters made the following statement sometime in the 1st quarter of 2020 directly to Plaintiff that he should "address past problems". This coincides with Plaintiff not being approved to lead certain projects despite the recommendation of Mr. Waters.

o Plaintiff regularly worked and succeeded in getting his direct reports raises that he felt they deserved. Mr. Waters routinely assured Plaintiff that he was on the path to promotion through the entirety of his service in the Contracts Management group.

But for Cause of Race Retaliation Impacts While Plaintiff worked for Tenney Way, NCSA Supply Chain Senior Director:

o Within several weeks of Plaintiff's hiring at McDermott, there was an introductory e-mail between Burt Durstock and Tenney Way. Burt Durstock was Plaintiff's hiring manager at DEBS and played a key construction support role on the ACC project at that time. The two gentlemen were acquainted from previous projects in which they worked. Other DEBS personnel were copied on this communication, such as John Snyder, who is mentioned in Jesse McCay's Affidavit as making derogatory statements against Plaintiff.

o Despite being told Plaintiff was on track for promotion; Plaintiff would be transferred to Tenney Way's Supply Chain group in January of 2021 in a lateral move. This was peculiar, as several Project Directors said at the time stated that they would welcome Plaintiff on a lead role to support their projects if Plaintiff's functional manager position were to be eliminated.

o During and following the transition to the NCSA Supply Chain Group, blatant discrimination would occur. Starting on January 11, 2021, both Lara Damian (HR Manager) and Keira Markle (Supply Chain Director) were visibly uncomfortable speaking to Plaintiff, performing actions such as grabbing their blouses to cover themselves and looking down and away when speaking.

o On January 19, 2021, on a work-related phone call, a co-worker by the name of Daniel Phillips asked if Plaintiff had been tested for STDs.

o On February 1, 2021, Plaintiff made an inquiry with the EEOC after it was clear Plaintiff

would not be receiving a timely Performance Appraisal. On April 6, 2021, Plaintiff made a formal complaint using the ethics reporting line regarding a coworker asking him if he had been tested for STDs. McDermott stated in a communication from HR that Plaintiff would not be told the results of the investigation. As a result of the perception that Plaintiff has an STD, and in retaliation for his prior complaints of racial discrimination at Duke Energy as described above, McDermott has discriminated and retaliated against Plaintiff.

o **PLAINTIFF REPORTED TWO RECENT BLOOD PANEL RESULTS TO MCDERMOTT HUMAN RESOURCES AT THIS TIME. PLAINTIFF HAS NEVER TESTED POSITIVE FOR ANY SEXUALLY TRANSMITTED DISEASE, IS NOT A SEXUAL PREDATOR OF ANY KIND, HAS NO CRIMINAL RECORD OF ANY KIND, AND HAS NO CLAIMS OF SEX ABUSE AGAINST HIM. FURTHER, CHARACTER EVIDENCE IS NOT ADMISSIBLE IN RESPONSE TO THIS FILING AS A GENERAL RULE PER ARTICLE 4 (EVIDENCE RELEVANCE AND ITS LIMITS), CHAPTER 8 OF THE NC GENERAL STATUTES.**

o When Plaintiff began his employment with McDermott, it was expressed to him that his career path would have the opportunity for promotion. Instead, Plaintiff was reassigned with no clear path to being promoted. He was told by Mr. Waters in the summer of 2020 that achieving Director would be possible by the end of his third year with the company. In his new role, his functional manager, Keira Markle, explained to him that it would take multiple full project cycles prior to him being considered for a Director position in Subcontracts. In almost all cases, this would result in a period of greater than two years. Plaintiff's level of responsibility was drastically reduced in this new role.

o Plaintiff was laid off on December 6, 2021 in a reduction of force by McDermott International. During his support of the NCSA Supply Chain group Plaintiff had not been invited to or involved with any recurring meetings with Clients that involved discussion of on-going work activities. This would be expected in an environment where there is on-going work to be provided to the Client, in which Plaintiff as the lead Subcontracts Manager is involved in producing and/or providing input. In fact, Plaintiff received a Client meetings invitation to a recurring meeting reviewing on-going work items the day of his termination (clearly a thin attempt to cover up the pattern of intentional isolation of Plaintiff). In general, Plaintiff had been largely isolated from broader company work activities and meetings since filling suit against McDermott in federal court, which can be verified by Outlook Meeting Calendars and low activity in e-mail correspondence.

26. Jason Ezelle as a point of contact between but for cause retaliation while working for DEBS and later to be employed by McDermott International.

Jason Ezelle was a Construction Manager in support of the Lee Combined Cycle Project through the first half of 2016. He would leave Duke Energy Business Services in 2016, to work for McDermott International until sometime in 2020. It was shared to Plaintiff by former Duke Energy Business Services senior supervisory personnel that Mr. Ezelle was being investigated for pornography on his computer, workplace sexual harassment, and making racist comments at the time of his departure from DEBS. Plaintiff believes that Mr. Ezell is a highly likely candidate for spreading for spreading rumors about Plaintiff while at DEBS and after leaving DEBS. For example, a co-worker of both Mr. Ezelle and Plaintiff, Stan Kukulka made the following unsolicited comment to Plaintiff in June 2021, "Are you still messing with the women?"

27. Duke Corporation HR and Legal impacts to Plaintiff's Reputation due to But for Cause of Race
Retaliation Impacts experienced by Plaintiff in Houston, TX:

Plaintiff has record of McDermott counsel stating that Duke Energy has no record of any previous
complaints made by Plaintiff, a statement which is patently false and confirms contact between
McDermott International and agents of Duke Energy. Further, while it is not illegal for a previous
employer to contact a current employer, it is a federal crime to conspire against the individual
rights of an individual per U.S. Code §241. Communication of any false and defamatory
statements, including personal information that would be protected by Plaintiff's reasonable
expectation of privacy under the United States Constitution would be examples of an intent to
create a hostile work environment and inspire adverse employment action.

In addition, Plaintiff, despite having a strong resume and not being terminated for cause, went
unemployed for nearly six (6) months. This is a direct result of harm caused by on-line legal
research sites posting reference to Plaintiff's legal filings. Any influence that the filing against
Duke Energy Business Services will be a key focus area of any discovery effort.

28. Safety/Emotional Distress experienced in Houston, TX due to But for Cause Race Retaliation
Plaintiff has reasonable cause to fear for his safety. Multiple statements have been made against
Plaintiff's well-being. For example, during a project review meeting, John Snyder made mention
to Plaintiff's "Funeral" and who would be there to "Speak, and what would they say." At the time
Plaintiff took no objection to the statement, but given new facts in Jesse McCay's affidavit, this is
deeply troubling. Giving another example, a director at McDermott International questioned if

*Plaintiff's Original Complaint*                                                                                      17

there was any possibility of Plaintiff dying after Plaintiff stated he would be out for the remainder of the work week due to an elective surgery. He would later clarify that he was just "joking."

Due to the nature and extent of these claims, it has been demonstrated that animosity has built against Plaintiff with certain key individuals. To address Plaintiff's concerns for safety, Plaintiff is currently going through the expense of 24-hour gated security living accommodations. Plaintiff is currently seeking all available avenues through law to ensure his security long term given the new facts of this case.

## VI. CAUSES OF ACTION

### RACE DISCRIMINATION AND RETALIATION 42 U.S.C. 1981
Plaintiff hereby incorporates and realleges each and every paragraph
of the facts.

29.    Defendants have discriminated against Plaintiff in the terms and conditions of Plaintiffs employment because of Plaintiff's race and color (African American & Black). Plaintiff was subjected to discriminatory treatment that resulted in his unlawful constructive termination on the basis of his race, in violation of 42 U.S.C. §1981. *Due to the significant duration of willful But For Cause discrimination, Plaintiff intends to seek maximum criminal prosecution for DEBS and Duke Energy Corporation based on available facts.*

30.    Defendant has retaliated against Plaintiff which resulted in his unlawful constructive termination on the basis of his race and color in violation of 42 U.S.C. §1981.

31.    Defendant has communicated with another employer of Plaintiff , in an effort to discredit previous claims of harassment and discrimination, inspiring adverse employment actions in violation of Conspiracy Against Rights of Plaintiff under 18 U.S.C. §241.

32.    As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to: lost employment opportunities, lost wages, lost back pay and front

*Plaintiff's Original Complaint*                                                                                           18

pay, lost benefits, and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under 42 U.S.C. §1981.

33.     As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer impairment to his name and reputation, humiliation, embarrassment, emotional distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries form the Defendants under 42 U.S.C. §1981.

## VII.     DAMAGES/ATTORNEY'S FEES

34.     As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.  Due to the longevity of but for cause race retaliation perpetuated by Defendant, Plaintiff seeks the maximum award allowed by Law.

35.     Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff seeks recovery of reasonable and necessary attorney's fees already paid. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

## VIII.     JURY DEMAND

36.     Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## IX.    **PRAYER**

37.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

    a.   All damages to which Plaintiff may be entitled pursuant to this;

    b.   Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;

    c.   Judgment against Defendant, for back pay lost by Plaintiff as alleged herein;

    d.   Judgment against Defendant, for front pay and loss of opportunity by Plaintiff as alleged herein;

    e.   Grant Plaintiff general damages for the damage to Plaintiff's reputation;

    f.   Compensatory damages, including, but not limited to, emotional distress;

    g.   Past, present, and future physical pain and mental suffering;

    h.   Punitive damages;

    i.   Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

    j.   Pre-judgment interest at the highest rate permitted by law;

    k.   Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    l.   Costs of Court; and

    m.   Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

## X.  CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.  All evidence submitted is relevant per Rule 401 of the NC General Statutes – Chapter 8C.

Special consideration shall be given to the intent of Duke Energy Corporation regarding its defense of this case filing.  Plaintiff hired attorney Eric A. Montgomery to engage with Duke Energy in pre-trial mediation, and to file suit if those efforts were not successful.   In a letter dated May 22, 2023, addressed to Mr. Montgomery, Deputy Counsel for Duke Energy Corporation stated that "Duke Energy feels strongly that there is no evidence that Mr. Hamilton experienced any racial discrimination or retaliation while employed with Duke Energy."  This is despite the submission of two affidavits supporting Southern District of Texas case 4:21-cv-04070, which give details of the unfair and hostile workplace environments in which Mr. Hamilton was subjected during his time at Duke Energy.  Plaintiff strongly believes that it is the intent of the Defendants to cause further embarrassment to Plaintiff and deter Plaintiff from seeking remedies for the damages caused despite strong evidence of the claims presented herein.  For the sake of expediency, Plaintiff has made the difficult decision to file Pro Se and does not wish to seek any other counsel for this matter.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may

be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully Submitted,

Date of signing:     June 1, 2023

Signature of Plaintiff     _Winston P. Hamilton (signature)_

Printed Name of Plaintiff     Winston Hamilton

State of TX County of Harris
Subscribed and sworn to (or affirmed) before me on this
1 day of June, 2023 by
Winston Hamilton proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature _Mateo Gutierrez (signature)_

MATEO GUTIERREZ
Notary Public, State Of Texas
Comm. Exp. 04-19-2026
Notary ID# 13144226-9