UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00333-FDW-DCK

| | |
|---|---|
| WINSTON HAMILTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DUKE ENERGY BUSINESS SERVICES, LLC ) <br> and DUKE ENERGY CORPORATION, ) <br> ) <br> Defendants. ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (Doc. No. 18). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court issued a notice (Doc. No. 21) to Plaintiff, who appears *pro se*, advising him of the burden he carries in responding to Defendants' motion. This matter has been fully briefed, (Doc. Nos. 18, 19, 20, 22, 23), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is GRANTED.

### I. BACKGROUND

Plaintiff, a Black male, was hired by Defendants[1] in January 2005 and, by early 2010, earned the titled of Engineer III. (Doc. No. 16, p. 1.) In 2011, Plaintiff received an unfavorable performance evaluation. (Id.) After Plaintiff challenged his review, a director revised Plaintiff's review with a higher score and informed Plaintiff if he maintained good performance, he would be promoted to Lead Engineer. (Id. at 2.) After Plaintiff's review was revised, Plaintiff met with Human Resources to express concern "that the evaluation was driven by limiting Plaintiff's

---

[1] The Parties dispute whether Plaintiff was employed by Defendants and, if so, for what periods. Defendants submitted a "Declaration of Mark Teague", the Managing Director, asserting Defendant Duke Energy Business Services employed Plaintiff from March 2014 to October 2018. (Doc. No. 19-1, p. 2.) Defendants also submitted a "Declaration of Eddie Anderson", a Senior Project Director, asserting Plaintiff was employed by Duke Energy Carolinas LLC from May 2003 to March 2014. (Doc. No. 19-2, p. 2.)

1

promotional opportunity based on race." (Id. at 4.) In 2012, Plaintiff also spoke with his supervisor and a project vice president regarding his "perceived treatment from management and specific co-workers and that it was based on race." (Doc. No. 16, p. 4.) Specifically, comments had been made to Plaintiff that "[he] will never be senior leadership". (Id. at 5.)

After being told for several years Plaintiff was on track for promotion but not receiving one, Plaintiff accepted an internal lateral position in 2014. (Id.) In this position, Plaintiff completed what he thought to be an anonymous survey and provided feedback that "black people were treated poorly in certain areas". (Id. at 6.) Thereafter, Plaintiff experienced both supervisory and non-supervisory personnel making reference to his survey comments. (Id. at 7.)

In 2016, after serving in a lead position for two years, Plaintiff was not evaluated for a higher-level position that was ultimately awarded to a white male with no previous experience in the role. (Id.) At some point, the comments from coworkers became personal leading Plaintiff to believe that his personal, non-work internet activity was being monitored. (Id. at 8.) In 2018, Plaintiff informed his manager he was frustrated with the personal attacks and lack of promotion opportunities. (Id. at 9.) Plaintiff threatened legal action if his concerns were not addressed. (Id.) Two months later, Plaintiff received a promotion. (Id.)

In October 2018, Plaintiff accepted a job with McDermott International. (Id. at 11.) However, Plaintiff continued to experience discrimination including a lower salary and lack of promotions. (Id. at 13). Plaintiff believes this continued discrimination was a result of direct contacts between McDermott International and Defendants through projects they worked on together. (Id.) Ultimately, Plaintiff was laid off in December 2021 by McDermott International. (Id. at 16.)

In September 2021, Plaintiff filed suit against McDermott International in the Southern District of Texas, Case No. 4:21-cv-03097, alleging race, sex, and disability discrimination. The case against McDermott International has since settled. In December 2021, Plaintiff filed suit against Duke Energy Business Services in the Southern District of Texas, Case No. 4:21-cv-04070, alleging race discrimination. On August 8, 2022, the case against Duke Energy Business Services in Texas was dismissed for improper venue. On June 2, 2023, Plaintiff filed this matter against Defendants Duke Energy Business Services and Duke Energy Corporation alleging race discrimination and conspiracy under both federal and state law. (Doc. No. 1.) After obtaining leave from the Court, Plaintiff filed his First Amended Complaint on August 16, 2023. (Doc. No. 16.) On August 29, 2023, Defendants filed the present Motion to Dismiss. (Doc. No. 18.)

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Iqbal, 556 U.S. at 678. To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the "reasonable inference" that the defendant is liable for the misconduct. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

"When considering a motion to dismiss involving *pro se* parties, the court construes the pleadings liberally to ensure that valid claims do not fail merely for lack of legal specificity." Brown v. Charlotte Rentals LLC, No. 3:15-cv-0043-FDW-DCK, 2015 WL 4557368, at *2 (W.D.N.C. July 28, 2015) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). At the same time, however, the Court should not "assume the role of advocate for the pro se plaintiff." Gordon, 574 F.2d at 1151 (quotation omitted).

### III. ANALYSIS

#### A. 42 U.S.C. § 1981

Plaintiff alleges several claims of race discrimination under 42 U.S.C. § 1981. The Court liberally construes the First Amended Complaint as alleging discrimination and retaliation claims of hostile work environment, disparate treatment, disparate impact, failure to promote, and constructive discharge.

Pursuant to 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute also guarantees equal treatment in "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b). The statute of

limitations governing race discrimination and retaliation claims under 42 U.S.C. § 1981 is four (4) years. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) (holding claims arising under the 1991 amendments to section 1981 are governed by the four-year federal statute of limitations set forth in 28 U.S.C. § 1658). A claim accrues when the plaintiff knows, or should have known, of the actual injury—the adverse employment action. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–14 (2002). Ultimately, Courts will grant a motion to dismiss based on a statute of limitations defense only if the time bar is apparent on the face of the complaint. Semenova v. Md. Transit Admin., 845 F.3d 564, 567 (4th Cir. 2017).

Here, Plaintiff was employed by Defendants[2] from January 2005 to October 2018. Then, on June 2, 2023, Plaintiff filed this case against Defendants. The relevant period for purposes of the statute of limitations starts on June 2, 2019—four years prior to the commencement of this suit. At the time of filing, Plaintiff had not worked for Defendants in nearly five (5) years. Because Plaintiff was not employed by either Defendant during the relevant period, there is no adverse employment action which can constitute a claim under 42 U.S.C. § 1981.

Plaintiff attempts to argue that the statute of limitations period is based on the filing date for the original complaint filed in the Southern District of Texas case. (Doc. No. 22, p. 2.) The Court disagrees. The Southern District of Texas case was *dismissed* for improper venue on August 8, 2022. Notably, it was not *transferred* to this Court. Plaintiff refiled his case in this Court on June 2, 2023, nearly ten months after the prior dismissal and eight months after time expired on Plaintiff's race discrimination claims. This matter is before the Court pursuant to federal question jurisdiction, and Federal Rule of Civil Procedure 41 contains no savings provision tolling the statute of limitations for a period after an action is dismissed. See Renegar

---

[2] For purposes of analysis, the Court will presume without deciding that Duke Energy and DEBS were employers of Plaintiff during this period.

v. R.J. Reynolds Tobacco Co., 145 N.C. App. 78, 81 (2001). Additionally, neither the Texas nor the North Carolina saving statute applies.

North Carolina Rule of Civil Procedure Rule 41(b) provides a mechanism for a court to extend the statute of limitations by adding a savings clause to a dismissal without prejudice. Specifically, the rule provides: "If the court specifies that the dismissal of an action commenced within the time prescribed therefore . . . is without prejudice, it may also specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal." N.C. R. Civ. P. 41(b). A savings clause is not presumed to have been intended simply because the court dismissed the action without prejudice. See, e.g., Williams v. Cathy, No. 3:08-cv-65, 2008 WL 2277544, at *3 (W.D.N.C. June 2, 2008) ("Where a civil action has been involuntarily dismissed without prejudice, the plaintiff will not be entitled to additional time to refile where the order did not also specify that he was so entitled."); Burgess v. Equilink Corp., 652 F. Supp. 1422, 1426 (W.D.N.C. 1987) ("There is no exception in Rule 41(b) for filing beyond the limitations period for a plaintiff whose prior action was dismissed by an order and judgment which did not specify that a subsequent action may be commenced within one year."). Instead, the rule provides that if a one-year savings clause is to be provided, it must be specified in the court's order. N.C. R. Civ. P. 41(b); Lumber Co. v. Barkley, 461 S.E.2d 780, 781–82 (1995) ("The unambiguous language of Rule 41(b) permits the trial court to affirmatively specify in its order that the action be refiled within a year or less. The 29 June 1992 order contains no specification whatsoever with regard to the time in which plaintiff may commence a new action based on the same claim. Accordingly, the applicable statute of limitations is controlling with regard to the time in which plaintiff was allowed to refile.").

As an initial matter, only the race discrimination claim against Defendant Duke Energy Business Services was part of the originally filed Texas case. Plaintiff failed to request, from either the Southern District of Texas or this Court, a savings clause, and the time to do so is not in response to Defendants' Motion to Dismiss. See Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 203 F.Supp.3d 608, 612 (M.D.N.C. 2016). Ultimately, there are no extraordinary circumstances beyond Plaintiff's control which made it impossible to file the claims on time. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (explaining how federal courts have recognized equitable tolling in two situations: (1) where the plaintiff was prevented from asserting his claims "by some kind of wrongful conduct on the part of the defendant"; and (2) where "extraordinary circumstances beyond the [plaintiff's] control made it impossible to file the claims on time").

Even if the Court construed Plaintiff's conspiracy allegations to imply an argument for use of the integrated employer test, this too would fail. To determine whether an entity "that does not directly employ the plaintiff may still be considered an employer under" the statute, the Fourth Circuit has used the "integrated employer" test which sets forth four factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Bittle-Lindsey v. Seegars Fence Co., Inc., 2022 WL 1566770, at * 2–3 (May 18, 2022) (quoting Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999). Importantly, aside from Plaintiff stating that Defendants worked on the Asheville Combined Cycle Power Plant project with McDermott International[3], there is no evidence that the control of McDermott International's labor operations was

---

[3] The relationship, if any, between Defendants and McDermott International as potentially established through common work on the above named project may in fact be more attenuated than Plaintiff asserts as the power plant was "engineered and constructed by Chicago Bridge and Iron Company [ ], an entity which entered into a Business Combination Agreement, 'merged', with McDermott International, Inc. on December 18, 2017." (Doc. No. 16, p. 11.)

centralized with Defendants or that there was any degree of common ownership. Thus, Plaintiff cannot accredit any alleged adverse employment action while employed by McDermott International to Defendants to extend the statute of limitations period for his race discrimination claims. Accordingly, Plaintiff's alleged claims under 42 U.S.C. § 1981 are DISMISSED.

**B.      18 U.S.C. § 241**

Plaintiff alleges a conspiracy under 18 U.S.C. § 241 between Defendants and his subsequent employer, McDermott International. In support, Plaintiff asserts that there was "contact between McDermott International and agents of Duke Energy" and "information spread by [Duke Energy] continued to cause harassment to Plaintiff through his employment at McDermott International." (Doc. No. 16, p. 17.)

Under 18 U.S.C. § 241, it is a federal crime for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." Importantly, § 241 is the criminal analogue of 42 U.S.C. § 1983 and "do[es] not give rise to a civil action for damages." Cok v. Consentino, 876 F.2d 1, 2 (1st Cir. 1989). Plaintiff's reliance on § 241 fails as a matter of law because only the United States as prosecutor can bring a complaint under that section. Id.; see also Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) ("[D]ismissal of [plaintiff's] claims . . . alleging violations of [Section 241 and other statutes] was proper because these are criminal statutes that do not provide for a private right of action and are thus not enforceable through a civil action."); Tribble v. Reedy, 888 F.2d 1387 (4th Cir. 1989) (table) (affirming dismissal of civil action "alleg[ing] violations of 18 U.S.C. §§ 241, 1341 and 1343 . . . [because u]nless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute").

8

Even if the Court liberally construes the Complaint as raising a properly pled conspiracy claim pursuant to § 1983, Plaintiff has still failed to state a claim upon which relief can be granted. To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). The color of law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id. Plaintiff does not allege that his rights secured by the constitution and laws of the United States were violated by any state actor. See Thomas v. The Salvation Army So. Terr., 841 F.3d 632 (4th Cir. 2016) (affirming dismissal in favor of defendants, three private charities, because plaintiff did not allege any facts to remotely suggest that their actions were attributable to the state). Therefore, any attempt to rely on § 1983 is unavailing. Accordingly, Plaintiff's alleged claims under 18 U.S.C. § 241 and 42 U.S.C. § 1983 are DISMISSED.

C.   **North Carolina General Statute § 99D-1**

In the absence of Plaintiff's claims dismissed by the Court, the state claim under Section 99D-1 is clearly insufficient to support federal diversity jurisdiction. As such, in the exercise of its discretion, the Court declines to retain jurisdiction over this case.

The Fourth Circuit in Shanaghan v. Cahill discussed when it may be appropriate to dismiss state law claims when the federal basis for an action drops away. Id. at 109–12. The court may consider: "(1) the convenience and fairness to both parties; (2) judicial economy; (3) whether the amount claimed in the complaint was made in good faith or whether plaintiff was "consciously relying on flimsy grounds" to get into federal court; (4) whether plaintiff would be prejudiced from dismissal of the action, such as the existence of a statute of limitations bar; (5)

9

the amount of time and energy already expanded; (6) existence of an issue of state law best resolved in state court; and (7) other case-by-case considerations." See id. at 112–13; see also Piedmont Roofing Services, LLC v. Nationwide Mutual Ins. Co., No. 5:22-CV-00145, 2023 WL 1466613, at *2 (W.D.N.C. Feb. 2, 2023).

In consideration of these factors, the Court will exercise its discretion to dismiss Plaintiff's claim without prejudice. Although complete diversity of citizenship exists,[4] Plaintiff did not plead any facts related to the amount in controversy. Thus, the Court lacks diversity jurisdiction. Additionally, there is no added convenience to the parties by litigating in federal court. Plaintiff's claim of civil conspiracy, governed by North Carolina state law, is better resolved at the state court level. Plaintiff will not be prejudiced by dismissal of this action. Finally, the parties' time and efforts will not be wasted due to the early juncture of this matter. Accordingly, the Court declines to retain jurisdiction over this matter and Plaintiff's state law claim is DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 18), is GRANTED.

**IT IS SO ORDERED.**

_____
Frank D. Whitney
United States District Judge

---

[4] Plaintiff's domicile is in Texas. (Doc. No. 16, p. 1.) Both Defendants have their principle place of business in North Carolina. (Doc. No. 16, p. 2.)